MARY M. HEINEY ET AL. v. ANDREW NOLAN, PLAINTIFF IN ERROR.

Argued February 27, 1907—Decided November 11, 1907.

Where an owner of land along a tidewater creek has, prior to the act of March 20th, 1891, improved or reclaimed the easterly bank, it cannot be assumed, without evidence, that low-water mark on that side was not west of the centre line of the creek; the line of low water depends on the conformation of the bed of the creek and is a matter to be proved.

---

On error to Hudson Circuit.

Before Justices GARRISON, SWAYZE and TRENCHARD.

For the plaintiff, defendant in error, *William B. Gillmore.*

For the defendant, plaintiff in error, *John Milton.*

The opinion of the court was delivered by

SWAYZE, J. This is an action of ejectment. The defendant has erected a building, part of which is upon the land claimed by the plaintiff. The land was formerly under tidewater, a part of the bed of Mill creek. The plaintiff claims under a grant from the riparian commissioners dated January 11th, 1906. The defendant claims a title by adverse possession as against the state, and also by reason of his having reclaimed the land prior to 1891 under the Wharf act of 1851. *Gen. Stat., p.* 3753. The trial court overruled both claims of the defendant, that of adverse possession upon the ground that the statute of limitations does not run against the state, and that of reclamation upon the ground that no one could acquire title except by grant from the riparian commissioners.

The first question is difficult and important, and ought not to be decided until after a more thorough discussion than that with which we have been favored. As we think the judgment must be reversed, it may not, however, be amiss to suggest some of the difficulties that arise, so that they may be present to the minds of counsel upon the retrial.

The first question is whether section 20 of the act for the limitation of actions (*Gen. Stat., p.* 1978, *pl.* 27), which applies in terms to the lands of the state, is applicable to lands under tidewater, which may be granted by the state in fee, and are not merely held in trust for the purposes of public navigation. *Illinois Central Railroad* v. *People of Illinois,* 146 *U. S.* 387. If so, can a title by adverse possession be acquired since the passage of the act of 1891 (*Gen. Stat., p.* 2795, *pl.* 43) which enacts that no occupation or reclamation of land under water, without legislative act or revocable license, shall divest the title of the state, or confer any rights upon the party who has reclaimed or who is in possession of the same.

If the statutes permit a title to land under tidewater to be acquired by adverse possession, the further question arises whether a valid title can be so acquired in view of the consti-

tutional provision as to the fund for the support of free schools, and the statutory appropriation of the income from the riparian lands to that purpose. *Henderson* v. *Atlantic City,* 19 *Dick. Ch. Rep.* 583.

It is not now necessary to pass upon these questions since we think the trial judge erred in rejecting the defendant's offer to prove that he had reclaimed the land prior to the repeal of the Wharf act in 1891. By the common law of this state, if the owner of land bounded by the shore upon tide-water make improvements upon or reclaim the shore adjoining his lands, the part of the shore so improved or reclaimed belongs to him, and cannot be granted by the state. *Gough* v. *Bell,* 2 *Zab.* 441; 3 *Id.* 624. The subject was regulated by the act of March 18th, 1851, commonly referred to as the Wharf act. *American Dock and Improvement Co.* v. *Trustees of Public Schools,* 12 *Stew. Eq.* 409, 413. Section 1 authorizes the riparian owner to improve the shore and to appropriate the same to his own exclusive use. The act defines the shore as the land between the limits of ordinary high and low water (section 11). Section 2, which authorizes docks, wharves and piers beyond the limits of ordinary low water, has no bearing upon the present case, since the improvements were neither dock, wharf nor pier, and for the further reason that there was no offer to show that the license required by section 3 of the act had been obtained. This act was repealed by the act of March 20th, 1891, but the repeal was not to be construed to restore any supposed rights, usage or local common law.

Under the law as it stood prior to 1891, the defendant could acquire title as far as the low-water mark by improving the shore. Counsel for the plaintiff below assumes, without proof, that low-water mark on the easterly side of Mill creek, which was where the defendant's land lay, could not be to the west of the centre line of the creek, and that any improvements made by the defendant to the west of that centre line must have been beyond low-water mark, and hence unauthorized. This assumption is not justified by the evidence or without evidence. The line of low water on either side must depend upon the conformation of the bed of the creek. The

bank on the west side may have fallen off sheer, and that on the east side have been shoal for very nearly the whole width of the creek, so that the shore line on the west may have been the same at high and low water, and the shore line on the east may have varied many feet.

All that the testimony shows as to the character of Mill creek, or the conformation of its bed or its shores, is the width from bank to bank, but that does not enable us to judge where low-water mark was. For aught we know, that may have been to the west of the *locus in quo,* and if so, the offer of the defendant should not have been overruled. Even if the burden was upon the defendant to prove where low-water mark was, the judge was not justified in rejecting the evidence as he did. His rejection was upon the ground that title could not be acquired by reclamation, but only by grant, and it was, in view of the other proofs, quite useless under that ruling for the defendant to offer proof as to the location of low-water mark.

For this error the judgment must be reversed and the record remitted for a new trial.